IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ANASTASIA V. WOOTTEN,<br>         *Plaintiff*,<br>v.<br>COMMONWEALTH OF VIRGINIA,<br>ET AL,<br>         *Defendants*. | CIVIL ACTION NO. 6:14-CV-00013<br><br>**MEMORANDUM OPINION**<br><br>NORMAN K. MOON<br>UNITED STATES DISTRICT JUDGE |

Plaintiff has filed a "MOTION FOR LEAVE TO AMEND COMPLAINT OR, IN THE ALTERNATIVE, FOR CERTIFICATION FOR INTERLOCUTORY APPEAL, AND TO STAY DISCOVERY AND CONTINUE TRIAL." Plaintiff's requests to stay discovery and continue the trial date are nondispositive matters that the pretrial order (docket no. 19) referred to United States Magistrate Judge Robert S. Ballou, and I will not address them. As for Plaintiff's motion to amend the complaint, it essentially seeks reconsideration of my memorandum opinion and order granting in part and denying in part Defendants' motion to dismiss, but it does not set forth any new law or additional relevant facts. Regarding Plaintiff's alternate request for certification of an interlocutory appeal, Plaintiff baldly asserts a "substantial ground for difference of opinion," 28 U.S.C. § 1292(b), without citation to any actual difference of opinion other than her own disagreement with mine; moreover, Plaintiff's arguments for certification underscore a conclusion that, had I not granted Defendants' motion to dismiss certain of her claims, Defendants would have a complete defense of qualified immunity, given that it is not possible to "be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion," 28 U.S.C. § 1292(b), and yet also determine that Plaintiff asserts a constitutional right that

was "clearly established" when it was allegedly violated, *Saucier v. Katz*, 533 U.S. 194, 199 (2001).

Accordingly, I will deny Plaintiff's motion without prejudice to her leave to pursue her motion before the magistrate judge requesting to stay discovery and continue the trial date.

# I.

## A.

Paragraph 24 of the pretrial entered in this case on July 15, 2014, provides that "[t]he court shall consider a party's motion to amend the pleadings in accordance with Rule 15 of the Federal Rules of Civil Procedure. Except for good cause shown, any such motion must be filed no later than 45 days from the date of this order." Rule 15(a)(2) provides that, once certain deadlines have passed, as they have here, "a party may amend its pleading only with the opposing party's written consent or the court's leave."[1] Leave should be freely given "when justice so requires." *Id*. However, "[i]f the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." 6 Charles Alan Wright, et al., *Federal Practice and Procedure: Civil* § 1487 (3d ed. 1998) (citations omitted). In exercising its discretion regarding leave to amend, a court "should focus 'on prejudice or futility or bad faith as the only legitimate concerns in denying leave to amend, since only these truly relate to protection of the judicial system or other litigants.'" *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)); *see also Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) ("A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the

---

[1] Federal Rule of Civil Procedure 15(a)(1) permits a party to amend its pleading once as a matter of course within 21 days of serving the pleading or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."

moving party has acted in bad faith, or the amendment would be futile.").

Regarding the most significant consideration here, futility, a court should deny a motion to amend as futile if the amended complaint could not survive a motion to dismiss for failure to state a claim. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (a court properly may refuse to allow leave to amend pleadings when the proposed changes would be futile); *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (citing *Glick v. Koenig*, 766 F.2d 265, 268–69 (7th Cir. 1985); 6 Charles A. Wright et al., *Federal Practice and Procedure: Civil* § 1487, at 643 & n. 26 (1990)). In addition, Local Rule 11(c)(2) requires all motions to amend pleadings to "state good cause justifying the relief requested."

### B.

I remark at the outset that the proposed amended complaint is as conclusory as the original complaint. For example, the count alleging supervisory liability against Defendants Holcomb, Hill, and Thorpe states that those defendants "acted under color of state law," and that their "actions deprived Wootten of a federally protected right," but does not elaborate what that "federally protected right" might be, other than to state in passing that these defendants "directed the activities" of others "with the knowledge that the actions they directed be taken were because of Wootten's exercise of her First Amendment rights to free speech and to petition." Otherwise, the allegations against these defendants in the proposed amended complaint are no more specific than they were in the original complaint. As I stated in my opinion on the motion to dismiss, and as I will discuss further herein, Plaintiff fails to state a First Amendment claim, and when there has been no constitutional injury, there is no cause of action against a supervisor. *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994). And, assuming *arguendo* that she had stated a First Amendment claim, the Fourth Circuit has observed that it has

-3-

set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw*, 13 F.3d at 799 (citations omitted). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it," *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)), and "there is no respondeat superior liability under § 1983," *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (citing *Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 691 (1978)).

The proposed amended complaint sets forth no allegations that Holcomb, Hill, or Thorpe were "on notice of a subordinate's tendency to act outside the law" and thus were "obligated . . . to take steps to prevent such activity." *Randall v. Prince George's County, Md.*, 302 F.3d 188, 203 (4th Cir. 2002).

Additionally, the proposed amended complaint names three individuals who were dismissed from the original complaint: William Anderson, Tom Penny, and Ronna Howard. However, as in the original complaint, their names are mentioned here and there in the factual allegations of the proposed amended complaint, but it is unclear which counts of the amended complaint might apply to them, and there are no allegations of Constitutional violations placed directly against them.

## C.

The proposed amendment is futile, given that Plaintiff fails to set forth any additional facts that would displace my ruling on the motion to dismiss. As for the cases Plaintiff cites, she essentially argues for reconsideration of my rulings on the motion to dismiss, but she does not point

-4-

Case 6:14-cv-00013-NKM-RSB   Document 76   Filed 04/29/15   Page 4 of 11   Pageid#: 499

to any *relevant* cases.

Regarding my ruling on the issue of permissible use under the Driver's Privacy Protection Act ("DPPA"), she states that,

> [t]o allow disclosure of protected information [by the Virginia Department of Motor Vehicles] to a law enforcement agency without regard for the purpose for which the information is accessed and produced is to encourage further misuse and abuse of this protected information: surely the exceptions to the DPPA do not permit wholesale disclosure to law enforcement agencies without regard to the purpose for the disclosure.

However, as I discussed in my memorandum opinion regarding Defendants' motion to dismiss, the disclosure of Plaintiff's DMV information to the Capitol Police is a "permissible use" under the Driver's Privacy Protection Act ("DPPA"), and Plaintiff's original complaint and proposed amended complaint explicitly describe a permissible use. *See* 18 U.S.C. § 2721(b)(1) & (14); *Maracich v. Spears*, ___ U.S. ___, ___, 133 S. Ct. 2191, 2198-99 (2013); *Reno v. Condon*, 528 U.S. 141, 145 n. 1 (2000).

Plaintiff adds that allowing DMV's disclosure of her personal information to the Capitol Police

> would fly in the face of *Luparello v. Inc. Vill. of Garden City*, 290 F. Supp. 2d 341 (E.D.N.Y. 2003), which permitted a DPPA suit to go forward when, "[a law enforcement officer] obtained the Motor Vehicle Record and personal information of Mr. Luparello[, but lacked] probable cause or reasonable suspicion to 'run the plate' of the vehicle." *Id*. at 344 (*citations omitted*). *Also see Nelson v. Jesson*, 2013 U.S. Dist. LEXIS 156711 (D. Minn. 2013) (denying motion to dismiss where human services worker with right of access to DMV records used that access for impermissible purposes).

(Verbatim quote.) But the disclosure by DMV of Plaintiff's DMV information to the Capitol Police does not quite "fly in the face" of either of those cases, because neither case concerns a "permissible use" under 18 U.S.C. § 2721(b)(1) & (14). *See Luparello*, 290 F. Supp. 2d at 344 (a plaintiff must show "that the defendants caused a DMV search to be made" and "that the search was not permitted

-5-

by any exception to the DPPA" in order to establish a claim); *Nelson v. Jesson*, 2013 WL 5888235, at * 3 (D. Minn. Nov. 1, 2013) (defendants must have disclosed personal information "'for a purpose not permitted under [the statute]' in order to be liable under the DPPA. 18 U.S.C. § 2724(a).")[2]

The permissible uses set forth in § 2721(b) are not affirmative defenses for which a defendant carries the burden of proof; rather, a plaintiff bears the burden of showing that the obtainment, disclosure, or use of personal information from her motor vehicle records was not for a purpose enumerated in that section. *See, e.g., Thomas v. George, Hartz, Lundeen, Fulmer, Johnson, King & Stevens, P.A.*, 525 F.3d 1107, 1111-14 (11th Cir. 2008) ("the statute's structure and language do not suggest a shift of the burden to the defendant"). Here, Plaintiff does not carry that burden.[3]

---

[2] In context, *Nelson v. Jesson* stated that, although Nelson had stated a claim against Schlener, the individual who "used his position at DHS to access [Nelson's] and 1,100 others' motor-vehicle records through queries made for impermissible purposes under the DPPA and without authorization or consent," Nelson failed to state a claim that commissioners of Minnesota's Department of Human Services and Department of Public Safety "violated the DPPA by allowing Schlener 'unfettered access' to the motor-vehicle-record database." 2013 WL 5888235, at * 3.

> Specifically, he asserts these Defendants "unlawfully disclosed [his and others'] motor vehicle records by knowingly making that private information available to Defendant Schlener and others without appropriate safeguards to ensure that the private information would be accessed solely for lawful purposes." (2d Am. Compl. ¶ 44.) These Defendants move to dismiss, asserting their alleged conduct is not actionable under the DPPA.
>
> Although these Defendants advance several arguments in support of their contention, the Court need only address one: Nelson has not sufficiently alleged an impermissible purpose. Assuming for the sake of argument these Defendants did disclose Nelson's personal information by giving Schlener access to the database, they must have done so "for a purpose not permitted under [the statute]" in order to be liable under the DPPA. 18 U.S.C. § 2724(a). It is not enough that they disclosed information to Schlener and he acted with an impermissible purpose, the Commissioners themselves must have acted with such a purpose.

*Id.*

[3] Indeed, construing the proposed amended complaint in the light most favorable to Plaintiff, the most she alleges is her speculation that Defendants Holcomb and Hill—Commissioner and Assistant Commissioner of the Department of Motor Vehicles—disclosed her DMV information to the Capitol Police "*in an attempt to restrict her rights under the First Amendment to the Constitution of the United States,*" which she describes
(continued...)

## II.

Plaintiff requests that, should I deny her motion to amend, I submit my findings on her factual allegations to the Fourth Circuit by certifying an interlocutory appeal. Certification under 28 U.S.C. § 1292(b) is permitted

> [w]hen a district judge, in making in a civil action an order not otherwise appealable

---

³(...continued)
elsewhere in the complaint as her "right to free speech and to petition elected officials." I note that she does not allege that the Capitol Police actually used her DMV information to restrict those rights; rather she alleges only that Holcomb and Hill *attempted* to restrict her rights.

Furthermore, the Fourth Circuit's interpretation of Eleventh Amendment immunity likely bars the DPPA action. Where the Congressional power to enact a statute lies in Article 1, Section 8 (the Commerce Clause) of the Constitution, the Eleventh Amendment protects states and their departments from suit for money damages brought by individuals. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996); *Alden v. Maine*, 527 U.S. 706 (1999); *Lizzi v. Alexander*, 255 F.3d 128 (4th Cir. 2001). Thus, public officials share Eleventh Amendment immunity from an action under the DPPA.

For example, in *Martin v. Wood*, 772 F.3d 192 (4th Cir. 2014), plaintiff Martin blamed her supervisor and the Eastern State Hospital Director for intentional misconduct and sued each in their individual capacities for violation of the Fair Labor Standards Act4 ("FLSA")—like the DPPA, a Commerce Clause enactment. The Fourth Circuit held that "Martin cannot circumvent the Eleventh Amendment by naming them as defendants in their individual capacities if, in reality, she is suing them for actions taken by them in their official capacities on behalf of Eastern State Hospital." *Martin*, 772 F.3d at 195. The Court explained that,

> [t]o identify the real, substantial party in interest, we thus examine the substance of the claims stated in the complaint, positing inquiries such as: (1) were the allegedly unlawful actions of the state officials tied inextricably to their official duties; (2) if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State; (3) would a judgment against the state officials be institutional and official in character, such that it would operate against the State; (4) were the actions of the state officials taken to further personal interests distinct from the State's interests; and (5) were the state officials' actions *ultra vires*.

*Martin*, 772 F.3d at 196 (internal quotations and internal citations omitted). The Fourth Circuit observed that "[t]he complaint includes no allegation that . . . Wood and Jones acted in an *ultra vires* manner or attempted to serve personal interests distinct from the Hospital's interests." *Id*. Thus the Fourth Circuit reversed the district court's denial of the defendants' motion to dismiss and directed the dismissal of the action.

Plaintiff's DPPA claim presents the same situation. Plaintiff's proposed amended complaint repeats the conclusory allegations of the original complaint, and still lacks specific facts showing that Defendant Hill's motive in disclosing Plaintiff's DMV records to the Capitol Police—which is a permissible use—was *ultra vires*.

under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided*, *however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b).

Regarding her First Amendment claims, Plaintiff raises a naked assertion of "substantial ground for difference of opinion" without reference to any case that establishes a difference of opinion. In my opinion on the motion to dismiss, I discussed *Brooks v. Arthur*, 685 F.3d 367, 370 (4th Cir. 2012), wherein the Fourth Circuit affirmed the principle that the protection of the First Amendment is not available where the employee is speaking not as a citizen on matters of public concern, but as an employee with a personal concern and complaint. If, as Plaintiff contends, there is substantial grounds for disagreement about how such principle is applied to these facts, she has not aided her contention by citing *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 353 (4th Cir. 2000), which I also discussed at length and distinguished from Plaintiff's case.

The other case Plaintiff cites, *Brickey v. Hall, et al*, Civil Action No. 1:13-cv-00073, 2014 WL 4351602 (W.D. Va. September 2, 2014), is readily distinguishable from Plaintiff's complaint. Police Officer Brickley publicly discussed the following in printed articles: that he had found irregular invoices for $500 in the police department budget, raising the issue of the misuse of taxpayer money; the need for more foot patrols in the Town of Saltville; the need for professional investigators to focus on drug trafficking; and the need in the Town of Saltville to create and maintain balanced budgets. *Id*. at 3-5. at *3-5. Judge Conrad found that

> Brickey's published comments were made in response to specific questions posed by

-8-

local newspapers in the context of the Town Council election. The content of Brickey's
answers focused on what he perceived as Saltville's "greatest needs" and how he would
strive to meet those needs if elected to Town Council. Specifically, Brickey's
comments regarding police professionalism and drug investigations implicate public
safety and government efficiency — issues that would undoubtedly concern Saltville
voters. In fact, these issues were already matters of public debate well before Brickey's
statements were published in the local newspapers.

*Id*. at *13-14. Officer Brickey *public* comments addressed matters of police professionalism, *public* safety, and government efficiency, taking *public* positions on issues already in *public* debate before he published his views in newspapers. Plaintiff's proposed amended complaint alleges none of these elements; we have no indication of genuine *public* concern about the complained-of workplace behavior of one individual.[4]

---

[4] In support of her proposed amended complaint, Plaintiff presents a letter from R. Creigh Deeds, a member of the Senate of Virginia, regarding a related case filed in this Court's Roanoke Division by another former employee of the DMV. The letter discusses a meeting in Sen. Deeds' office on October 12, 2012,

> with Sean McGowan of the Police Benevolent Association, a number of PBA officials and law enforcement officers, which included David Stults, Robert Supinger and Anastasia Wootten. Mr. Stults, Mr. Supinger, and Ms. Wootten serve with DMV in areas of my district. It is not unusual for me to meet regularly with members of the law enforcement community, various associations, citizens and others.

Mr. Deeds explained that "this meeting covered many topics, concerns and legislative goals," but "the primary concerns expressed by the aforementioned folks from DMV involved issues" that are "clearly protected" under a state law provision, not at issue in this case, "which protects the rights of state employees to contact elected officials." In one paragraph of the letter, Mr. Deeds provides specific details of the substance of his "discussions concerning DMV," which

> was associated with circumstances within the Appomattox Division's main office in Lynchburg which provided service to areas in my district. *In brief, one individual was negatively impacting the work unit creating concern for others*. This had resulted in failures in delivery of services to citizens; inappropriate and hostile actions; violations of law and policy; impropriety and malfeasance of agency leadership. *The three from DMV as well as their coworkers* had utilized every available avenue of redress within the agency as well as the Fraud, Waste and Abuse program. *As the situation escalated due to the agency's failure to implement progressive discipline*, it became more unstable.

(Emphasis added.) This detail of the discussion with Mr. Deeds reveals that, even though Plaintiff and her fellow DMV officers may have "realized the issue was bigger than one troubled employee and that they were
(continued...)

-9-

Moreover, for a certification of an interlocutory appeal, I must certify that my previous order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation." 28 U.S.C. 1292(b). The grounds for an interlocutory appeal do not arise here.

> The Fourth Circuit has stated regarding the term "controlling question of law" that "certainly the kind of question best adapted to discretionary interlocutory review is a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes."

*KPMG Peat Marwick, L.L.P. v. Estate of Nelco*, 250 B.R. 74, 78 (E.D. Va. 2000) (quoting *Fannin v. CSX Transp. Inc.*, 873 F.2d 1438 (Table), 1989 WL 42583, at *5 (4th Cir.1989)). Plaintiff has not shown that her interlocutory appeal raises a "narrow question of pure law whose resolution will be completely dispositive of the litigation." *Id*. As I have already observed, if Plaintiff's claims present any "question of law as to which there is substantial ground for difference of opinion," 28 U.S.C. § 1292(b), then it is not plausible that Plaintiff asserts a constitutional right that was "clearly established" when it was allegedly violated, *Saucier*, 533 U.S. at 199. Thus, even were I to certify an interlocutory appeal, the Fourth Circuit's decision would not control the outcome of a single count of the proposed amended complaint, because further proceedings would be needed to decide the qualified immunity issues Defendants have raised.[5] A question of law is not

---

[4](...continued)
seeing failures within the system at multiple levels as well as all levels of agency management," the crux of their complaint "at multiple levels as well as all levels of agency management" was their dissatisfaction with the DMV's "failure to implement progressive discipline" against "one individual" who "was negatively impacting the work unit," *i.e.*, a personnel matter raised by employees with personal concerns and complaints, as I detailed in my memorandum opinion on the motion to dismiss.

[5] Defendants asserted qualified immunity in their motion to dismiss and in their opposition to the motion to amend. In my opinion on the motion to dismiss, I noted that, "[t]o the extent I have denied the motion
(continued...)

controlling if litigation will "necessarily continue regardless of how that question [is] decided." *State of N.C. ex rel. Howes v. W.R. Peele, Sr. Trust*, 889 F. Supp. 849, 853 (E.D. N.C. 1995). As for the "substantial ground for difference of opinion" element, it is not enough for Plaintiff to disagree with my review of her complaint; "this element is typically met where there is a difference of opinion *between courts*," not between the trial court and a dissatisfied party, although it can also be met when "the question is one of first impression." *First Owners' Ass'n of Forty Six Hundred v. Gordon Properties, LLC*, 470 B.R. 364, 373 (E.D. Va. Apr. 26, 2012) (citing *In re Flor*, 79 F.3d 281, 284 (2d Cir.1996)). Certification, then, would not be in conformity with § 1292(b), nor would it in any way address concerns of judicial economy.[6]

### III.

For the stated reasons, Plaintiff's motion will be denied without prejudice to her leave to pursue her motion before the magistrate judge requesting to stay discovery and continue the trial date. An appropriate order accompanies this memorandum opinion.

Entered this __29th__ day of April, 2015.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[5](...continued)
regarding claims where Defendants added *pro forma* arguments regarding qualified immunity, *e.g.*, '[a]lternately, the Court may dismiss any public official from this Count on the basis of qualified immunity,' Defendants may renew their motion."

[6] Regarding her DPPA claim, my earlier discussion shows that Plaintiff has not persuaded me that there is a difference in judicial opinion on the "permissible use" of DMV data. Furthermore, I repeat that, given the precedence of *Martin v. Wood*, it is appears likely to me that Defendants deserve Eleventh Amendment immunity. Additionally, assuming they were they not entitled to Eleventh Amendment immunity, they would likely deserve qualified immunity, given that there is no appellate or district court case in this Circuit that guides or limits the "permissible use" of DMV data outlined in 18 U.S.C. § 2721(b)(1) & (14). *See, e.g., Maracich v. Spears*, ___ U.S. at ___, 133 S. Ct. at 2198-99; *Reno v. Condon*, 528 U.S. at 145 n. 1.