IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

ANASTASIA V. WOOTTEN, )
                   *Plaintiff*, )    CASE NO. 6:14-CV-00013
                    )
v. )
                    )    **OPINION**
COMMONWEALTH OF VIRGINIA, *et al.*, )
                    )    **By: Norman K. Moon**
                   *Defendants*. )    **United States District Judge**

This case is before the Court on Defendants' second renewed motion for summary judgment. (Dkt. 130). On January 7, 2015, I entered a memorandum opinion addressing the parties' cross-motions for summary judgment on Plaintiff's due process and Title VII retaliation claims. (*See generally* dkt. 140, *available at* -- F. Supp. 3d --, 2016 WL 81504 (W.D. Va. Jan. 7, 2016)).[1] The January 7th opinion did not consider Plaintiff's free speech claim for retaliatory termination, which is the subject of the instant motion. As the parties acknowledged at oral argument, this claim has been exhaustively briefed and is now ripe for decision. (*See*, *e.g.*, dkts. 124 & 125 (denying as premature but without prejudice Defendants' initial motion for summary judgment)).

**I. STANDARD OF REVIEW AND FACTS RELATING TO THE FREE SPEECH CLAIM**

The January 7th opinion set forth the applicable standard of review on summary judgment. (Dkt. 140 at 3). The Court incorporates by reference that discussion and applies it here. Similarly, the January 7th opinion explained the facts of this case in great detail. (*Id*. at 3-12). The Court adopts that summation and provides here only a brief background of the case, along with the facts specifically bearing on Plaintiff's free speech claim.

---

[1] For reasons of administrative efficiency, an accompanying order was delayed until issuance of the instant memorandum opinion. (Dkt. 140 at 26-27).

1

Plaintiff was employed by Virginia's Department of Motor Vehicles ("DMV") and (along with her supervisors, Supinger and Stultz) had a contentious relationship with a co-worker, Ms. Dawson. On September 13, 2012, a physical incident between Plaintiff and Dawson in the bathroom led Plaintiff to swear out a warrant for Dawson's arrest the next day. DMV began an extensive investigation into the incident. The state court judge who presided over Dawson's criminal trial found her not guilty of assault and battery, believing that any contact did not rise to the level of criminal conduct. DMV's investigation likewise found Plaintiff's allegations of wrongdoing by Dawson to be without merit. Additionally, DMV concluded that Plaintiff's handling of the incident evinced a lack of credibility, an abuse of authority by injecting personal motives into a criminal case, and a failure to follow orders to avoid contact with Dawson. Accordingly, DMV first suspended Plaintiff on March 6, 2013 and then fired her on April 5, 2013 through notices from Defendant Hill. Plaintiff also opposed what she believed to be unfair discrimination against her direct supervisor, Robert Supinger (who was transferred to another division, allegedly on account of geographic reorganization and an anti-nepotism policy).

Plaintiff bases her free speech claim on her statements made during meetings with elected officials. First, Plaintiff visited Virginia State Senator Steve Newman on April 27, 2012. (Dkt. 120-1 ¶ 6; *see also* dkt. 111-4 at ECF 2). Plaintiff also attests that, at some unspecified time, she "met with Senator John Edwards and informed him generally of the incidents that were occurring at the Lynchburg DMV office, including the resources that were being wasted to accommodate Ms. Dawson." (Dkt. 120-1 ¶ 6). In October 2012, Plaintiff met Virginia State Senator Creigh Deeds in Charlottesville, Virginia with Supinger, his supervisor (David Stultz), and others for approximately an hour. (Dkt. 111-4 at ECF 3-4; dkt. 111-4 at ECF 2; dkt. 120-2 at ECF 2-4).

Plaintiff "just tag[ged] along" to the meeting because she "just wanted to meet" Senator Deeds and did not get the chance to meet senators often. (Dkt. 111-3 at ECF 5; dkt. 120-2 at ECF 5). During the meeting, the issue "was mentioned to Senator [Deeds] about what's going on with the grievances [of Plaintiff and her colleagues] and everything else" transpiring in the Lynchburg DMV office. (Dkt. 111-3 at ECF 4, 7). Plaintiff told Senator Deeds about the alleged assault and battery by Dawson. (Dkt. 111-4 at ECF 3; dkt. 120-4 at ECF 3). In a February 3, 2013 interview with DMV personnel, the most specific topics Plaintiff said she mentioned to Senator Deeds were "what's going on with the grievances and everything else . . . [j]ust in general, the whole situation in our office." (Dkt. 120-2 at ECF 4, 6).

According to her affidavit of August 3, 2015, Plaintiff shared with the senators her beliefs that: (1) Dawson "was [a] serious threat to citizens and other co-workers", a "distraction" to co-coworkers, and a drain on office efficiency; (2) Supinger was being discriminated against; (3) unspecified "Fraud, Waste, and Abuse Complaints" were being ignored; (4) Defendants "were taking steps to cover their actions", and; (5) that the geographic reorganization of DMV to accommodate Dawson wasted taxpayer money and caused technical difficulties with the radio system. (Dkt. 120-1 ¶¶ 7-14).

Plaintiff has also submitted a May 6, 2013 letter from Senator Deeds relaying his recollection of the topics at the October 2012 meeting, *i.e.*, that "one individual [presumably Dawson] was negatively impacting the work unit creating concern for others." (Dkt. 109-1 at 2). Although Senator Deeds stated that Plaintiff, Supinger, and Stultz "realized the issue was bigger than one troubled employee," he wrote that "the situation escalated due to the agency's failure to implement progressive discipline" and that Plaintiff, Supinger, and Stultz thus felt "they were seeing failures within the system at multiple levels as well as all levels of agency management."

3

(*Id*. at 2).

At some time after the meetings with Senators Edwards and Newman, Plaintiff claims Defendant Boswell stated that her "job is in jeopardy because [she] spoke to elected officials"; however, this statement was relayed to Plaintiff by Stultz and Supinger. (Dkt. 111-4 at ECF 2-3; dkt. 120-4 at ECF 2-3). Plaintiff "wasn't present" at the meeting where the statement allegedly occurred. (Dkt. 111-4 at ECF 3; dkt. 120-4 at ECF 3). As mentioned below, the Court has found no record evidence to support the contention.

## II. ARGUMENTS AND ANALYSIS

"A plaintiff seeking to assert a § 1983 claim on the ground that he experienced government retaliation for his First Amendment-protected speech must establish three elements: (1) his speech was protected, (2) the alleged retaliatory action adversely affected his protected speech, and (3) a causal relationship between the protected speech and the retaliation." *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015). The causation element is "rigorous" because the "claimant must show that 'but for' the protected expression the [state actor] would not have taken the alleged retaliatory action." *Id*. at 885; *see Tobey v. Jones*, 706 F.3d 379, 390 (4th Cir. 2013).

For speech to be protected in this context, it must have been on a matter of public concern:

> When a public employee sues a government employer under the First Amendment's Speech Clause, the employee must show that he or she spoke as a citizen on a matter of public concern. If an employee does not speak as a citizen, or does not address a matter of public concern, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. Even if an employee does speak as a citizen on a matter of public concern, the employee's speech is not automatically privileged. Courts balance the First Amendment interest of the employee against the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

*Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 131 S. Ct. 2488, 2493 (2011) (internal citations and quotations omitted) (applying same framework to Speech Clause and Petition Clause retaliation claims).

### A. Causation

Plaintiff's free speech claim falls most clearly short on the issue of causation, as she cannot show that her statements to elected officials (even if constitutionally protected) were the "but for" cause of her termination. For one, as explained in my January 7th analysis regarding the Title VII retaliation claim, Defendants had legitimate reasons for her termination: Essentially, they lost confidence in her ability to serve as an effective law enforcement officer due to her handling of the Dawson situation, *i.e.*, her lack of credibility, injection of personal motives, and abuse of authority. (Dkt. 140 at 21-25). Indeed, the Fourth Circuit has treated the causation element in free speech retaliation claims quite like the analysis of legitimate reasons for termination in the Title VII retaliation context. *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 356-58 (4th Cir. 2000) (holding that record "clearly evidences" termination "for reasons unrelated to [the] allegations relating to public safety" and concluding reasonable jury could not find reasons were pretextual).

There are other shortcomings with Plaintiff's claim. It is notable how little attention her briefing devotes to causation and the critical, related issues of who made the decision to fire her and what that person knew when the firing occurred.[2] In short, the question of "who knew what, and when did he know it?" is not sufficiently answered in a way that supports Plaintiff's claim.

---

[2] Specifically, Plaintiff's opposition brief to the instant motion contains barely one page on causation. (Dkt. 138 at 16-17). It makes no effort to marshal evidence showing who the decision-maker was and what—if anything—that person knew about any potentially protected speech of Plaintiff. (*See also* dkt. 94 at 2-3 (Opposition brief to Defendants' first motion for summary judgment on the free speech claims)). As explained above, this is a fatal defect.

Identifying the decisionmaker in a retaliation claim is crucial because "by definition, an employer cannot take action because of a factor of which it is unaware . . . the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish" causation. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998); *e.g., Holland v. Washington Homes, Inc.*, 487 F.3d 208, 216-20 (4th Cir. 2007) (plaintiff's claims failed because he did not establish that decisionmaker had knowledge of protected activity); *Baqir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) (First Amendment claim) (quoting *Dowe*, 145 F.3d at 657). Here, Defendant Hill is the decisionmaker, as my January 7th opinion (dkt. 140 at 7-8), Plaintiff's termination notices of April 5, 2013 (dkts. 89-5 & 89-6), and Plaintiff's own brief on the Title VII retaliation issue all make clear. (Dkt. 94 at ECF 12 (Defendants Thorpe and Hill "made the decision to terminate Wootten's employment") & 13 ("Hill had the ultimate authority to terminate Wootten"); *see* dkt. 94-13 (Thorpe Dep.) at ECF 9-10, 17 ("Hill as the Assistant Commissioner" was the "department head" and the "responsible individual . . . in this case with Ms. Wootten")).[3]

At oral argument, Plaintiff cited her "third interview" with DMV's investigators—during which she confirmed her meeting with Senator Deeds—as evidence of causation. That February 5, 2013 interview, of which only a portion was provided to the Court (dkt. 120-2), was conducted

---

[3] In a last-ditch attempt at oral argument to raise an inference of causation, Plaintiff stated that Senator Newman told Defendant Holcomb about Newman's meeting with Plaintiff. There are several difficulties with this assertion. First, Holcomb was not the decisionmaker. Second, Plaintiff's submissions have not pointed the Court to any evidence that any communication between Holcomb and Newman occurred. Indeed, her opposition brief (dkt. 138) does not even mention Holcomb. Third and relatedly, even if some communication took place, Plaintiff has not specified what, precisely, Newman relayed to Holcomb. This information is necessary to assess whether any decsionmaker acted on account of protected speech. Fourth, even assuming Holcomb knew—from Newman—that Plaintiff engaged in protected speech to Newman, there is no indication that Holcomb made the decisionmaker aware of it.

6

by Thomas Penny (DMV's investigator of the Dawson-Wootten incident), as well as Ronna Howard. There are two problems with Plaintiff's position.

First, *Hill* (not Penny or Howard) decided to fire Plaintiff.[4] Plaintiff has not directed the Court to any evidence showing that Penny or Howard made Hill aware of Plaintiff's meeting with Senator Deeds, or that Hill otherwise knew about it. Thus, he could not have taken it into consideration when deciding to fire Plaintiff.[5]

Second, even assuming Penny or Howard made Hill aware of Plaintiff's meeting with Senator Deeds, the most they could have conveyed to Hill based on the "third interview" is that Plaintiff discussed personal disputes and grievances. Plaintiff was "just tagging along" to the meeting with Senator Deeds and shared with him only "what's going on with the grievances" and "the whole situation" in their office. (Dkt. 120-2 at ECF 4, 6). This speech—as it was known to Penny, Howard, and (by hypothesis) Hill at the time—was a quintessential example of "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest [that] do not constitute speech about matters of public concern . . . but are matters more immediately concerned with the self-interest of the speaker as employee." *Campbell v. Galloway*, 483 F.3d 258, 267 (4th Cir. 2007). And because the causal relationship must be between "the *protected speech* and the retaliation," such a relationship is absent. *Raub*, 785 F.3d at 885 (emphasis added).

---

[4] As parenthetically observed above, Defendant Thorpe suggested in her deposition that she also helped Hill reach the decision to fire Plaintiff. This does not change the result because the same analysis regarding knowledge and causation applies to Thorpe.

[5] Penny did submit a report of his findings on the Dawson-Wootten incident to Hill, but this does not help Plaintiff. Penny's report was sent to Hill on December 7, 2012, two months *before* the "third interview" of Wootten. Furthermore, the report focused only on the Dawson-Wootten incident and did not discuss any speech by Plaintiff to elected officials. (Dkt. 140 at 5-6).

7

Finally, in her briefing, Plaintiff points to Defendant Boswell's alleged statement that her job was in "jeopardy" because she spoke with elected officials. (Dkt. 120 at 16; dkt. 138 at 16). The sole support for this contention is Plaintiff's own deposition. The difficulty for Plaintiff—aside from the fact that Boswell was not the decisionmaker or somehow influenced the decisionmaker—is that Boswell's statement is inadmissible hearsay because, as Plaintiff admits, she "wasn't present" at the meeting where Boswell's statement allegedly occurred; rather, Plaintiff knows of the statement only because "that is what [she] was told by David Stultz." (Dkt. 111-4 at ECF 3; dkt. 120-4 at ECF 3). It is well-settled that "hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment" or used to defeat it. *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991); *e.g.*, *Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995); *Rahrig v. Alcatel USA Mktg., Inc.*, 217 F. App'x 189, 193 (4th Cir. 2006). The Court raised this record defect at oral argument, to which Plaintiff responded that she believed Boswell himself confirmed in his deposition that he made such a statement. The Court has reread the excerpt of Boswell's deposition previously submitted by Plaintiff (dkt. 94-11), and no such statement was found.[6] Accordingly, summary judgment is proper.

B. **Other Arguments by Defendants**

1. **Matter of public concern**

---

[6] The Court emphasized at oral argument that it relies upon the parties to put their best case forward and to present evidence in support of their arguments. Both this Court and the Fourth Circuit have observed that judges "are not like pigs, hunting for truffles buried in briefs" or "in the voluminous record." *Verrinder v. Rite Aid Corp.*, No. CIV. 3:06CV00024, 2007 WL 4357595, at *4 (W.D. Va. Dec. 11, 2007); *see Walker v. Prince George's Cty., MD*, 575 F.3d 426, 429 n.* (4th Cir. 2009). The parties have filed four motions for summary judgment in this case, two addressing the free speech claim. Attached to the accompanying briefs (which often cross-reference each other) are approximately 90 exhibits. Simply put, the onus is on counsel to put their evidence in the record and to direct the Court's attention to it with briefs that intelligibly and efficiently cite the critical facts.

8

When assessing whether speech is on a matter of public concern, "the content, form, and context of the statement" must be considered. *Arvinger v. Mayor & City Council of Baltimore*, 862 F.2d 75, 79 (4th Cir. 1988). "Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community." *Kirby v. City of Elizabeth City, N. Carolina*, 388 F.3d 440, 446 (4th Cir. 2004). When "the statement in question did not involve a matter of public concern, but was rather made with only private interests in mind," there is no free speech claim. *Arvinger*, 862 F.2d at 76.

> Private matters between employers and employees may be the subject of internal controversy, but whether someone's sense of fair play is offended is not the constitutional inquiry. If favoritism crosses a line to the point that imperils the public welfare, such as [a plaintiff's] allegation that she was inadequately supported on dangerous police assignments because she was female, then the public would rightly be concerned about the matter. But if favoritism pertains primarily to a single individual, . . . that is not an issue of constitutional dimension.

*Brooks*, 685 F.3d at 375. A "purely personal grievance is not a matter of public concern." *Id*. at 372.

Defendants avoid directly confronting the topics from Plaintiff's affidavit that she discussed with elected officials, instead citing and reviewing several cases without much analysis of their application to the facts. (*See* dkt. 131 at 19-22). They also rely on precedent from the Seventh and Eleventh Circuit stating that the relevant inquiry is whether the speaker's purpose "was to raise issues of public concern," not whether the public would hypothetically be interested in the matter. (*Id*. at 20). Defendants argue that Plaintiff's complaints are analogous to those from an unpublished Fourth Circuit case that were not about a matter of public concern:

> Here, swearing out the criminal complaint dealt less with matters of police wrongdoing and more with Harris's criticism of the way his superiors treated his actions surrounding the underlying incident. *While Harris's allegations of police corruption may have incidentally related to a public concern, nothing in the record indicates that this was Harris's primary objective in swearing out the*

> *complaint*. In short, this speech simply does not concern a matter of police corruption; rather, this speech showed Harris's disagreement with his supervisor's discretionary decision not to pursue an investigation.

*Harris v. City of Virginia Beach*, 69 F.3d 532, at *5 (4th Cir. 1995) (*per curiam*) (emphasis added). Defendants conclude by asserting that Plaintiff and her comrades were "at best, informing elected officials of a workplace problem that their employer, DMV, was not addressing to their satisfaction." (Dkt. 131 at 22).

Plaintiff argues that her complaints, like other cases involving matters of public concern, pertained to matter of fraud and gross mismanagement. (Dkt. 138 at 8). She claims, citing *Hunter v. Town of Mocksville*, 789 F.3d 389 (4th Cir. 2015), that because her job duties did not concern reporting fraud and abuse, she was clearly speaking as a citizen and not as an employee. In *Mocksville*, the plaintiff's speech involved the police chief's alleged criminal behavior, racial discrimination, and cronyism. *Id*. at 393-94.

Plaintiff's complaints are a far cry from such issues and are quite similar to *Harris*. From its inception, this case has revolved around and been animated by matters of Plaintiff's private interest—her workplace antagonism with Dawson, their September 13, 2012 bathroom incident, and Defendants handling of both that incident and Dawson generally in a manner not to Plaintiff's liking.[7] Plaintiff made her views on Dawson well-known to Defendants, who thoroughly investigated the matter and decided that Plaintiff's complaints were without merit. She attempts to cast her concerns about Dawson and her views on how Defendants handled her dispute with Dawson as matters of public interest, but a public employee cannot turn every employment matter with which he disagrees with his superiors into a constitutional issue. *See*

---

[7] Defendants characterize Plaintiff's speech in their reply brief as driven by her "objective . . . to push management to impose discipline on Dawson, [*i.e.*,] a private workplace goal." (Dkt. 140 at 3).

10

*Brooks*, 685 F.3d at 375. Otherwise, any friction in public employment could be characterized, on some level, as a "waste" of government resources on account of hampered productivity. *But see Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 131 S. Ct. 2488, 2501 (2011) ("in one sense the public may always be interested in how government officers are performing their duties," but that bare interest is not a matter of public concern). A superior's decision addressing a workplace dispute in a way that does not suit an employee would metastasize the tension and lead to more "waste." *But see Connick v. Myers*, 461 U.S. 138, 148-49 (1983) (plaintiff's speech regarding "confidence and trust . . . in various supervisors" not protected when they are "mere extensions" of plaintiff's underlying workplace complaints). And mere disagreement with a supervisor could be painted as "a breakdown in effective management, department-wide failures, [and] public safety concerns." (Dkt. 138 (Pl's Br.) at 13); *but see Chitwood v. Feaster*, 468 F.2d 359, 360 (4th Cir. 1972) ("bickering and running disputes with the department heads" not constitutionally protected). As the Court has already stated when explaining why Senator Deeds' letter regarding his meeting with Plaintiff involved private interests rather than public concerns:

> [T]he crux of [Wootten, Stultz, and Supinger's] complaint 'at multiple levels as well as all levels of agency management' was their dissatisfaction with the DMV's 'failure to implement progressive discipline' against 'one individual' [*i.e.*, Dawson] who 'was negatively impacting the work unit,' *i.e.*, a personnel matter raised by employees with personal concern and complaints.

(Dkt. 76 at 10-11 n.4 (quoting dkt. 60-2 (Letter from Sen. Deeds))).

Further, as explained earlier, Plaintiff's comments to Senator Deeds—as described by her in her February 2013 interview with DMV—about her, Supinger, and Stultz's grievances are not matters of public concern. Of course, Plaintiff submitted an August 2015 affidavit in which she expounds upon the topics discussed with Senator Deeds. This too does not aid her. Her

11

contention that Dawson was a "distraction" and "threat" (dkt. 120-1 ¶ 9) is simply a manifestation of her personal disagreement with how her superiors managed the office and resolved internal workplace issues, as is her generic reference to unspecific fraud, waste, and abuse complaints that were being ignored. (*Id*. ¶ 11). Her comment that Supinger was subjected to discrimination was a matter involving a personal grievance. (*Id*. ¶ 10). Her statements opposing "redistricting" (*id*. ¶ 13) are part and parcel of her opposition to Supinger's transfer that resulted from the redistricting (*see* dkt. 109 ¶¶ 45-58), her antagonism towards Dawson, and the strained attempt to link these personal positions to "serious governmental misconduct." *Town of Mocksville*, 789 F.3d at 401-02. This latter point applies equally to the collateral complaint about the allegedly ineffective radio system (dkt. 120-1 ¶ 14): It is a last-ditch effort to robe her opposition to redistricting and Supinger's transfer in the guise of a "matter relating to public safety."[8] *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 353 (4th Cir. 2000); *see* dkt. 138 at 14-15. Finally, the conclusory assertion (dkt. 120-1 ¶ 12) in her affidavit that "Defendants were taking steps to cover their actions" is "insufficient to survive a motion for summary judgment." *Cottom v. Town of Seven Devils*, 30 F. App'x 230, 235 (4th Cir. 2002) (dismissing First Amendment retaliation claim) (citing *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996)).[9]

---

[8] Furthermore, at oral argument, the Court questioned Plaintiff about whether her superiors were aware of her complaint about the "STARS" radio system. Plaintiff conceded that Defendant Boswell in fact acknowledged some issues with the system and recognized that DMV needed to work through them. Despite this ongoing effort, Plaintiff went outside the normal channels to undermine her superiors' efforts. *See Ober v. Evanko*, 80 F. App'x 196, 201 (3d Cir. 2003) (no protected speech when police officer went "outside the chain of command"); *Leonard v. Fields*, 791 F. Supp. 143, 144 (W.D. Va. 1992) (sheriff deputies' disregarding of chain of command to communicate personal employee grievances not constitutionally protected).

[9] Of course, even if one of these topics was a matter of public concern, the Court has already explained that Plaintiff has pointed to no evidence that the decisionmaker knew they were discussed with Senator Deeds before Plaintiff was terminated.

### 2. Balancing of interests and qualified immunity

Defendants argue that the balance of interests weighs in their favor because DMV had "wide latitude" over disciplinary matters. Plaintiff and her compatriots, Defendants claim, "went to see members of the General Assembly to undermine their superiors at DMV on the issues of employee discipline and DMV's effective management." (Dkt. 131 at 22). Additionally, Defendants claim that, "more than alerting the public," Plaintiff's complaints to legislators about divisional redistricting and an ineffective radio system actually "undermined the Commissioner" of DMV. Plaintiff observes that Defendants cite no evidence of Plaintiff's intent and relies on *Mocksville* for the proposition that concealing corruption is not a governmental interest. (Dkt. 138 at 15-16). Neither party analyzes this element at length, and it is not necessary to decide it in order to resolve the motion. Likewise, the Court need not reach the qualified immunity question because it has found there was no underlying right violated.

## III. CONCLUSION

To summarize, the Court finds that insufficient evidence exists for Plaintiff to meet the "rigorous" causation standard that *Raub v. Campbell*, 785 F.3d 876 (4th Cir. 2015) establishes. Furthermore, Plaintiff has not shown that she spoke on matters of public concern, as opposed to matters deriving from personal grievances or disagreement with her superiors' decisions. Accordingly, Defendants' motion for summary judgment will be granted. The Court will enter an appropriate order that also incorporates the decisions of the Court's January 7th memorandum opinion. The clerk is directed to send a copy of this opinion to all counsel of record.

Entered this __21st__ day of January, 2016.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE