IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| ANASTASIA V. WOOTTEN, | ) | |
|         *Plaintiff,* | ) | CASE NO. 6:14-CV-00013 |
| | ) | |
| v. | ) | |
| | ) | **OPINION** |
| COMMONWEALTH OF VIRGINIA, *et al.*, | ) | |
| | ) | By: Norman K. Moon |
|         *Defendants.* | ) | United States District Judge |

Before the Court is a motion for reconsideration filed by Defendants Richard Holcomb, Joseph Hill, and Jeannie Thorpe. (Dkt. 152). On January 7, 2016, I entered a memorandum opinion on the parties' motions for summary judgment that (1) agreed with Defendants that Plaintiff's Title VII retaliatory termination claim should be dismissed, (2) found that judgment in favor of Plaintiff was proper on the issue of liability for her procedural due process claim under 42 U.S.C. § 1983, (3) rejected Defendants' qualified immunity defense, and (4) concluded liability against Defendants Holcomb and Hill was established on Plaintiff's supervisory liability claim. (Dkt. 140, *available at* – F. Supp. 3d –, 2016 WL 81504 (W.D. Va. Jan. 7, 2016); *see also* dkt. 147 (Order)).

At first blush, Defendants' motion and brief seek reconsideration only of my grant of Plaintiff's motion for partial summary judgment, which sought judgment on the due process and supervisory liability claims. (Dkt. 152; dkt. 153 at 1; *see also* dkt. 158 (Def's Reply Br.) at 1). But they actually seek more than the advancement of these adversely-decided claims to trial. Their opening brief argues Defendants are entitled to qualified immunity on the due process claim, hence seeking reconsideration of not only the grant of Plaintiff's summary judgment motion but also the denial of their own. Likewise, they reassert their entitlement to summary judgment on Plaintiff's supervisory liability claim. Defendants thus challenge all but the first of

1

the four aforementioned conclusions and consequently ask the Court to revisit the denial of *their* motion for summary judgment.[1]  The parties are familiar with the January 7th opinion, so I will review it only as needed in the course of addressing Defendants' arguments.

I.   **PROPRIETY OF THE MOTION FOR RECONSIDERATION**

Before considering Defendants' arguments in support of reconsideration, the Court must first decide whether the motion is appropriate.  Conspicuously, Defendants' moving brief did not articulate the standard of review that applies or otherwise mention (much less analyze) the procedural propriety of their motion.[2]  The denial or partial grant of summary judgment is an interlocutory order, and the decision to revisit such an order is committed to the Court's discretion as part of its inherent authority.  *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003); *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472-73 (4th Cir. 1991); *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 402 F. Supp. 2d 617, 619 (M.D.N.C. 2005); Fed. R. Civ. P. 54(b).

In a widely-cited passage, the Eastern District of Virginia has explained that reconsideration is:

> appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.  A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court.  Such problems rarely arise and the motion to reconsider should be equally rare.

*Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983).  Courts have subsequently distilled the grounds for a Rule 54(b) motion for reconsideration to (1) an intervening change in the law, (2) new evidence that was not previously available, or (3)

---

[1]   Defendants eventually made this point explicit in the reply brief.  (Dkt. 158 at 12).

[2]   Defendants finally discussed the applicable standard of review in their reply brief after Plaintiff raised the issue.  (Dkt. 158 at 1-4).

2

correction of a clear error of law or to prevent manifest injustice. *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-CV-00363, 2014 WL 2121563, at *1 (E.D. Va. May 20, 2014); *see also* dkt. 157 (Pl's Reconsideration Opp. Br.) at 2-4 (compiling cases). Such motions are disfavored and should be granted "sparingly." *Downie v. Revco Disc. Drug Ctrs., Inc.*, No. 3:05-CV-00021, 2006 WL 1171960, at *1 (W.D. Va. May 1, 2006). That is because their "improper use . . . can waste judicial resources and obstruct the efficient administration of justice." *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (M.D.N.C. 2003).

Critically here, reconsideration is not meant to re-litigate issues already decided, provide a party the chance to craft new or improved legal positions, highlight previously-available facts, or otherwise award a proverbial "second bite at the apple" to a dissatisfied litigant. It is "inappropriate where it merely reiterates previous arguments." *Univ. of Va. Patent Found. v. Gen. Elec. Co.*, 755 F. Supp. 2d 738, 744 (W.D. Va. 2011). It is not an occasion "to present a better and more compelling argument that the party could have presented in the original briefs," *Madison River,* 402 F. Supp. 2d at 619, or to "introduce evidence that could have been addressed or presented previously." *Regan v. City of Charleston, S.C.*, 40 F. Supp. 3d 698, 702 (D.S.C. 2014). Aggrieved parties may not "put a finer point on their old arguments and dicker about matters decided adversely to them." *Evans v. Trinity Indus., Inc.*, No. 2:15CV314, 2015 WL 8331944, at *3 (E.D. Va. Nov. 25, 2015). In sum, "a party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider." *Duke Energy*, 218 F.R.D. at 474.

With these standards in mind, the Court finds Defendants' motion is not proper. First and foremost, Defendants' submission is effectively a full-blown, renewed motion for summary judgment. Defendants note at the outset their reliance on the record evidence, as well as

"additional documents attached herein." (Dkt. 153 at 2 n.1). They attach to their brief 141 pages of exhibits, labeled "A" through "NN." (Dkts. 153-1, 153-2, 153-3, 153-4). While some of these documents were in the record on summary judgment, many were not, as discussed in greater detail below. Motions for reconsideration "do not allow the losing party to attempt to supplement the record with previously available evidence." *Carter v. Porter*, No. 5:08-CV-246-REW, 2012 WL 298479, at *1 (E.D. Ky. Feb. 1, 2012); *Allen v. Henry Ford Health Sys.*, No. 08-14106, 2010 WL 653253, at *1 (E.D. Mich. Feb. 19, 2010); *see Schering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998); *Gray v. Donaldson*, No. 7:13-CV-14 HL, 2014 WL 7215200, at *1 (M.D. Ga. Dec. 17, 2014).

The reconsideration brief itself (dkt. 153) is a dense 25 pages, over twice as long as Defendants' opposition brief to Plaintiff's motion for summary judgment and nearly as long as their brief in support of their own summary judgment motion. (Dkt. 95 at 1-11; dkt. 87 at 1-31). The organization of Defendants' reconsideration brief further reveals its nature: It contains a twelve-page statement of "material facts," plus another three-page "summation of critical facts in the light most favorable to Defendants." (Dkt. 153 at 2-14, 15-18). Defendants' opposition to Plaintiff's original summary judgment motion—the place one would expect Defendants to have articulated the "critical facts in the light most favorable" to them—contains only a six-paragraph statement of facts. (Dkt. 95 at 2-5). The statement of facts from their moving summary judgment brief, a mere eight pages, is likewise substantially less fulsome than that of their reconsideration brief. (Dkt. 89 at 1-8). In other words, Defendants devoted as much or more attention and effort to developing the facts on reconsideration as they did on the parties' motions for summary judgment. Indeed, Defendants admitted at the March 3, 2016 oral argument that they "stated [the] facts far better" in their reconsideration brief than in their summary judgment

briefs.[3] That approach, of course, inverts the proper course of litigation, subjects the opposing party to repetitive and burdensome proceedings, and drains judicial resources. *Duke Energy*, 218 F.R.D. at 474.

If the length and density of the reconsideration brief suggest Defendants seek a mulligan on their summary judgment briefing, a granular review confirms it. There are several instances of new arguments or newly-presented (but previously available) evidence that Defendants cite on reconsideration but did not highlight on summary judgment.

- Defendants offer a detailed review of state court proceeding in Roanoke, Virginia involving Plaintiff and the Department of Motor Vehicles ("DMV"). (Dkt. 153 at pp.10-12, 14 ¶¶ 35-40, 49). Defendants rely on that litigation and cite various statements or representations made during it, arguing that they legitimize DMV's view (and their own) about which method of process Plaintiff selected for grieving her termination. (*Id*. at 18). But Defendants did not mention the Roanoke Circuit Court proceedings once in their briefs supporting their motion for summary judgment or in their brief opposing Plaintiff's summary judgment motion. (Dkts. 87, 95, 97). The same is true regarding correspondence—now cited by Defendants—between DMV's counsel and Mr. Grab on November 25, 2013 and December 3, 2013. (Dkt. 153 at p.10, ¶¶ 33-34; *see id.* at p.18)

- For similar reasons, Defendants point to transcribed statements made by various attorneys, including one representing Plaintiff, at oral argument during a separate litigation in the Richmond City (Va.) Circuit Court. (Dkt. 153 at pp.4-5 ¶ 13; *see id*. at p.16). Nowhere in their original summary judgment briefs did they discuss those statements.

- Defendants' summary judgment briefs did cite other aspects of the Richmond Circuit Court case to support their position, primarily a brief filed by Plaintiff on July 18, 2013. (Dkt. 87 at 9, 18; dkt. 95 at 6). But my January 7th opinion acknowledged that argument and found that it was not viable. (Dkt. 140 at 9-10, 15-16 & nn.7, 13). In their reconsideration brief, Defendants try to bolster their position with evidence of correspondence or submissions to the Richmond Circuit Court on July 1st, 3rd, and 26th of 2013. (Dkt. 153 at pp.5-7 ¶¶ 15-17, 19). Once again, this evidence was not discussed in Defendants' summary judgment briefs. (Dkts. 87, 95, 97).

- Defendants now wish to emphasize portions of their deposition testimony recounting their reliance on counsel in deciding what process was due to Plaintiff. (Dkt. 153 at 13-14 ¶¶ 46-48). They then use this evidence to support an argument that they are entitled to

---

[3] Presently, the Court is without the benefit of a transcript from oral argument, and thus draws on its recollection and contemporaneous notes when recounting the March 3rd hearing.

5

qualified immunity based, in part, on the advice of counsel. (*Id*. at 24 (citing *Wadkins v. Arnold*, 214 F.3d 535 (4th Cir. 2000))). But Defendants' qualified immunity argument on summary judgment neither used this evidence nor cited the law on which they now rely. (Dkt. 87 at 19-20; dkt. 95 at 9).

While additional instances are discussed below, the aforementioned examples show that the instant motion is merely an attempt to introduce previously-available evidence, present refurbish arguments, and otherwise re-litigate summary judgment. These are improper uses of reconsideration. *Madison River,* 402 F. Supp. 2d at 619; *Regan*, 40 F. Supp. 3d at 702. As I emphasized in my January 21st opinion dismissing Plaintiff's First Amendment retaliation claim, the Court:

> relies upon the parties to put their best case forward and to present evidence in support of their arguments. Both this Court and the Fourth Circuit have observed that judges "are not like pigs, hunting for truffles buried in briefs" or "in the voluminous record." *Verrinder v. Rite Aid Corp.*, No. CIV. 3:06CV00024, 2007 WL 4357595, at *4 (W.D. Va. Dec. 11, 2007); *see Walker v. Prince George's Cty., MD*, 575 F.3d 426, 429 n.* (4th Cir. 2009). . . . Simply put, the onus is on counsel to put their evidence in the record and to direct the Court's attention to it with briefs that intelligibly and efficiently cite the critical facts.

(Dkt. 146 at 8 n.6, *available at* 2016 WL 264959 (W.D. Va. Jan. 21, 2016)). Indeed, defendants—relying on their "additional facts [that] counter" the conclusions in my January 7th opinion—earnestly conceded at the March 3, 2016 oral argument that their materials "should have been put in the record" at summary judgment.

Likewise, courts widely agree that parties have the burden to present legal arguments in the first instance, a point which also undermines Defendants' substantive arguments raised for the first time on reconsideration. *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 22 n.7 (1st Cir. 1991) ("Courts are entitled to expect represented parties to incorporate all relevant arguments in the papers that directly address a pending motion."); *Ned Chartering & Trading, Inc. v. Republic of Pakistan*, 294 F.3d 148, 155 (D.C. Cir. 2002) (The Court "is not *required* to unearth theories

6

and precedents not cited by a party . . . . Bringing those precedents and theories to the attention of the district judge is the job of the party's attorneys."); *Mason v. Shinseki*, 25 Vet. App. 83, 95 (2011) (The "Court will not invent an argument for a represented party who had ample opportunity and resources to make that same argument, but, for whatever reason—be it strategy, oversight, or something in between—did not do so"); *Buckingham v. Am. Med. Response Ambulance Serv., Inc.*, No. 12-CV-02606-CMA-KMT, 2014 WL 349109, at *3 (D. Colo. Jan. 31, 2014) (concluding, on summary judgment, that the "Court is not required to make arguments on behalf of a party to litigation, especially a represented party"). It is not a basis to undo and redo summary judgment simply because a litigant may feel that his original briefs did not put his best foot forward. *See, e.g., Int'l Ctr. For Tech. Assessment v. Thompson*, 421 F. Supp. 2d 1, 10 (D.D.C. 2006) ("This court's decisions are 'not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.'") (quoting *Turkmani v. Republic of Bolivia*, 273 F. Supp. 2d 45, 50 (D.D.C. 2002)). Accordingly, the motion will be denied.

## II. DEFENDANTS' REASONS FOR RECONSIDERING THE DUE PROCESS CLAIM ARE UNAVAILING

In addition to the procedural shortcomings of the motion for reconsideration, the Court also finds its substantive arguments lacking. Defendants make three arguments against my prior decision on the merits of the due process claim. The first two—one regarding the import of a March 13, 2013 statement by Plaintiff's counsel,[4] the other asserting Plaintiff waived her due process rights by failing to partake in available administrative remedies[5]—were already raised by

---

[4] Specifically, I found that Plaintiff's March 13, 2013 response to Defendant Hill's suspension and allegation letter—in which she stated she "wished to pursue this matter under" the Virginia Grievance Procedure ("VGP")—could not reasonably have been thought to address how she wanted to grieve her termination, given the fact that she had not even been terminated yet. Nothing in Defendants' motion leads me to reconsider that conclusion.

[5] I concluded Plaintiff did not forgo administrative remedies. Defendants once again

Defendants and addressed in my January 7th opinion. (Dkt. 140 at 7-8, 9-10, 15-17 & nn.6-7, 13). As explained *supra*, Defendants have now tried to bolster those arguments with supplemental facts. (*E.g.*, dkt. 152 at 15-18).

Taken more generally, these arguments amount to the contention that I misapplied the

---

argue that the VGP's director agreed with them based on a November 19, 2013 letter. (Dkt. 87-10 at ECF 16). I addressed this position in the January 7th opinion, concluding that Plaintiff had the ability to choose between two methods of grievance, that she in fact did so prior to the director's letter, that Defendants ignored her decision, and that the VGP director ultimately agreed on May 6, 2014 with Plaintiff's view that she made an election in October 2013 (thus extinguishing any reasonable basis for Defendants' refusal to proceed in accordance with Plaintiff's wishes, assuming such a basis existed in the first instance). (Dkt. 140 at 11 n.8, 16-17).

Moreover, Defendants misstate the contents of the VGP director's May 6, 2014 letter. They assert—and vigorously maintained at oral argument—that the letter declared Plaintiff had chosen, "by her *May 5, 2014* correspondence," the non-VGP method of grievance, and it was *that* purported "May 5, 2014 election" which "prompted [the director's] decision to foreclose the VGP" on May 6, 2014. (Dkt. 153 at p.13 ¶ 45 (emphasis added)). (This maneuver allows Defendants to (1) skirt the Court's conclusion that Plaintiff's October 25, 2013 election foreclosed VGP proceedings by law and thus (2) argue the director's November 19, 2013 letter was proof that Plaintiff bypassed administrative remedies.)

But that is not what the director's May 6th letter did or said: It mentioned Plaintiff's "May 5, 2014" letter *not* as proof of an election *as of that date*, but because Plaintiff's May 5, 2014 letter clearly referred to the director to the "grievance previously copied to" him (*i.e.*, the October 25, 2013 election). The full sentence from the May 6th letter reads:

> On May 5, 2014, Ms. Baudean provided a response in which she indicated that her client had elected to resolve her grievance under the [non-VGP option] *in a grievance previously copied to EDR*.

(Dkt. 153-4 at ECF 23 (emphasis added)). A review of Plaintiff's May 5th letter makes clear that it was pointing the director's attention to the grievance filed "on October 25, 2013" seeking non-VGP process. (*Id*. at ECF 22). Defendants' so-called "May 5, 2014 election" is a fiction created by ignoring both the italicized phrase of the director's May 6th letter and the actual contents of Plaintiff's May 5th letter to which it referred.

Finally, *even accepting* their characterization of the letter of May 6, 2014, Defendants have never adequately explained why—when the VGP director unambiguously decreed that Plaintiff "is no longer able to pursue a dismissal grievance under the [VGP]" (dkt. 153-4 at ECF 23)—they continued their refusal to provide Plaintiff with a simple post-termination hearing. Twenty-two months (and counting) after learning from the VGP director himself that the VGP—*i.e.*, the process Defendants tried to dragoon Plaintiff into—was foreclosed, no hearing to Plaintiff has been provided. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985) ("At some point, a delay in the post-termination hearing would become a constitutional violation.").

summary judgment standard in the setting of cross-motions by not construing the facts favorably towards Defendants when considering Plaintiff's motion. (Dkt. 153 at 14-15, 18-21). For the moment, I put aside the appropriateness of arguing that the summary judgment standard was misapplied when the basis of the motion for reconsideration relies heavily on newly-advanced facts. *See supra*. Indubitably, the January 7th opinion did not specifically address the standard on cross-motions for summary judgment, but for good reason: There was no genuine dispute of material fact or inference, only the legal conclusions that flowed from them.

Defendants themselves made this clear. Their opposition brief to Plaintiff's summary judgment motion admitted the case "presents the unusual situation in which *each party believes that the undisputed evidence points to judgment as a matter of law in his or her favor*." (Dkt. 95 at 2 (emphasis added)); *see also Webster v. ACB Receivables Mgmt., Inc.*, 15 F. Supp. 3d 619, 625 (D. Md. 2014) ("When cross-motions for summary judgment demonstrate a basic agreement . . . concerning what legal theories and material facts are dispositive, they may be probative of the lack of a factual dispute."). I agreed in my January 7th opinion and proceeded to decide the issues of law accordingly.

Judicial estoppel is an illuminating concept here because it "is designed to prevent a party from playing fast and loose with the courts and protect the essential integrity of the judicial process." *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998). The test has three prongs:

> First, the party sought to be estopped must assert a position inconsistent with that taken in prior litigation and the position must be one of fact rather than law or legal theory. Second, the prior inconsistent position must have been accepted by the court. And third, the party sought to be estopped must intentionally have misled the court to gain unfair advantage.

*Id.* Defendants' current position is inconsistent with the position they took on summary

judgment and with which the Court agreed. Nevertheless, judicial estoppel does not apply because whether a material dispute of fact exists is a question of law for the Court, not one of fact. *Webster v. ACB Receivables Mgmt., Inc.*, 15 F. Supp. 3d 619, 625 (D. Md. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The Court is also not convinced that Defendants' original position was "misleading," as judicial estoppel requires, because Defendants were correct the first time: The evidence and the reasonable inferences did not create a genuine dispute of material fact. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985) (requiring "dual inquiry into the *genuineness* and *materiality* of any purported factual issues") (emphasis in original), *overruled on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). The genuineness and materiality inquiries are assessed based on the record "then before the court," *id.*, rather than on newly-submitted evidence. Simply put, the record at summary judgment on the due process claim—although somewhat lengthy—was undisputed and relatively straightforward, despite Defendants' attempt to muddle it now. Plaintiff was fired, the parties exchanged a volley of letters and engaged in tangential litigation (both of which the Court catalogued but neither of which revealed a genuine dispute of material fact), and no hearing was ever provided to Plaintiff despite her request for one. The Court then passed upon the legal issues—*e.g.*, interpreting state law on grievance procedures and their availability, what process was due—raised by the parties to decide the motions.

As a third and final reason for reconsidering the due process claim, Defendants Hill and Thorpe cite new excerpts of their depositions and argue that they were not responsible for providing process to Plaintiff. (Dkt. 153 at 21).[6] Their moving brief on summary judgment did

---

[6] The testimony cited by Defendants actually undermines, rather than supports, the assertion that they lacked culpability. For example:

not distinguish between the liability of the individual Defendants. (Dkt. 87 at 11-19). Indeed, the brief explicitly lumped the individual Defendants together when asserting that a non-Defendant government employee was in fact responsible for the lack of due process. (*Id.* at 19).[7] Defendants' opposition to Plaintiff's summary judgment motion relied on sweeping legal arguments (dkt. 95 at 7-11) and likewise grouped the individual Defendants together without distinction. (*Id.* at 9). In other words, Defendants present a new argument that they could have previously raised but did not, and hence the Court refuses to consider it. *Royal Ins. Co. of Am. v. Miles & Stockbridge, P.C.*, 142 F. Supp. 2d 676, 678 n.1 (D. Md. 2001) (rejecting as "an improper basis for a motion to reconsider" a party's "new theory of its case, not argued previously" where party "has had plenty of opportunity to make its arguments"); *Madison River,* 402 F. Supp. 2d at 619; *Duke Energy.*, 218 F.R.D. at 474.

## III. QUALIFIED IMMUNITY STILL DOES NOT APPLY

The Court has already mentioned Defendants' newfound "reliance on the advice of counsel" argument, and rejects it for the reasons stated above.

Defendants on summary judgment made only a short qualified immunity argument, asserting simply that *Riccio v. County of Fairfax*, 907 F.2d 1459 (4th Cir. 1990), and *Holland v. Rimmer*, 25 F.3d 1251 (4th Cir. 1994), required dismissal. (Dkt. 87 at 20; dkt. 95 at 9). The January 7th opinion directly addressed those cases and also recounted several Supreme Court and Fourth Circuit precedents setting forth the "basic rule"—disregarded in this case—that a comprehensive post-

---

> Q: Who ultimately had the decision whether Ms. Wootten was going to be permitted a hearing under Law-Enforcement Officers Procedural Guarantee Act?
> A: Ultimately, I think it would reside with Joe Hill.

(Dkt. 153-4 at ECF 33 (Ex. MM, Excerpts of Jeannie Thorpe Dep.)).

[7] The January 7th opinion rejected the argument. (Dkt. 140 at 17 n.14).

11

termination hearing is required for a public employee. (Dkt. 140 at 18-20 (citing, *inter alia*, *Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 196-96 (4th Cir. 2015))). Nothing about Defendants' instant position leads the Court to reconsider its conclusions. Their brief largely rehashes assertions and facts already raised and considered on summary judgment. It also contends that the Court too broadly defined the right at issue. But the January 7th opinion explained that Fourth Circuit precedent does require a case directly on point that finds a right clearly established in a "specific context." (Dkt. 140 at 20 (quoting *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 734 (4th Cir. 2013))). Yet that is precisely what Defendants desire through a narrow, hyper-specific definition of the right and by statements that "no Virginia case" or "no authority" exists on this or that point. (Dkt. 153 at 22-24). *Meyers* and other cases hold otherwise and apply here, especially because no fewer than six binding federal appellate decisions have put forth a clear-cut and fundamental rule that post-termination process is required. (*See also* dkt. 157 (Pl's Reconsideration Opp. Br.) at 10-11 (reviewing Defendants' concessions and observing "the essential due process issue here was straightforward").

## IV.  SUPERVISORY LIABILITY REMAINS

Quoting directly from Defendants' moving brief on summary judgment, my January 7th opinion observed that in "the absence of a constitutional injury, there is not cause of action against a supervisor" and that "Defendants Hill and Holcomb rest their supervisory liability defense on the[ir] argument [on the merits as to] Due Process." (Dkt. 140 at 20-21 (quoting dkt. 87 at 20)).[8] Because Defendants' arguments on the merits of the due process claim failed, so too did their stance on supervisory liability. (*Id*. at 21). After foregoing opportunities in three prior

---

[8]  Hill and Thorpe offered no substantive argument on the supervisory liability claim in opposition to Plaintiff's motion for summary judgment, and their reply brief in support of their own motion merely incorporated by reference their prior briefs. (Dkt. 97 at 8; *see generally* dkt. 95).

briefs on summary judgment to take substantive positions, only now on reconsideration do Defendants Holcomb and Hill muster independent analysis of the supervisory liability claim.[9] (Dkt. 153 at 24-25). Once again, this is not a proper approach to a motion for reconsideration. *Miles & Stockbridge*, 142 F. Supp. 2d at 678 n.1; *Madison River,* 402 F. Supp. 2d at 619; *Duke Energy.*, 218 F.R.D. at 474.

## CONCLUSION

For the reasons discussed above, Defendants motion for reconsideration will be denied. The clerk is directed to send a copy of this opinion to all counsel of record. An appropriate order will follow.

Entered this __10th__ day of March, 2016.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[9] As Defendants correctly noted in their opposition to Plaintiff's motion for summary judgment (dkt. 95 at 1 n.1), the Court already dismissed Defendant Thorpe from Count VI, the supervisory liability claim. (Dkt. 46 at 25-26 (Opinion); dkt. 47 (Order); *see* dkt. 87 at 2). Although Plaintiff subsequently was allowed to amend her complaint to add a First Amendment claim, the order stated "[l]eave is not granted to renew any other claims previously dismissed." (Dkt. 105). Plaintiff's amended complaint violated that order by reasserting Count VI against Defendant Thorpe. (Dkt. 109 ¶¶ 129-139).

In other words, Count VI was not properly pending against Defendant Thorpe at the time of summary judgment. Consequently, my January 7th opinion did not refer to her in its analysis of Count VI, although neither did it exclude her by name. For the avoidance of doubt and because Defendants' motion for reconsideration suggests that Defendant Thorpe may be liable on Count VI, the Court clarifies that the January 7th opinion and corresponding order (dkts. 140 & 147) do not subject Defendant Thorpe to liability on Count VI. (*See* dkt. 157 at 13).