IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

ANASTASIA V. WOOTTEN, )
    Plaintiff )
     )
v. ) Civil Action No. 6:14-cv-00013
     )
COMMONWEALTH OF VIRGINIA, et al., )
    Defendants. )

### PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

COMES NOW the Plaintiff, Anastasia Wootten, by counsel, and for her Responses to Defendants, Commonwealth of Virginia Department of Motor Vehicles and the Commonwealth of Virginia's (these two Defendants collectively "DMV") First Interrogatories, states as follows:

### INTERROGATORIES

1. Specify the allegations of retaliation, discrimination, and/or harassment set forth in Robert Supinger's grievances or Charge.

**ANSWER:**

The allegations of Mr. Supinger's grievances or Charge(s) of Discrimination speak for themselves.

I am generally aware of the allegations that Mr. Supinger has made against the DMV. TO my knowledge and understanding, he filed Charges on different occasions; one of his Charges alleged that the DMV had discriminated against him on the basis of his gender; another Charge alleged discrimination on the basis of race, national origin and color perpetrated against his wife. Mr. Supinger has also alleged that the DMV retaliated against him for his speech to elected officials and his previous EEOC Charges.

Exh. 1

2. Explain in detail your acts in support of Supinger's Charge.

**ANSWER:**

This Interrogatory is vague as it does not does define what is meant by a Charge, (Plaintiff will assume it refers to a Charge of Discrimination filed with the EEOC), nor does it specify to which of Mr. Supinger's EEOC Charges it relates, and my understanding is that he filed more than one Charge. Further, the term "support" is vague as it relates to these incidences.

Notwithstanding this vagueness, Plaintiff states that she witnessed events that resulted in many of the allegations made by Mr. Supinger. She is listed as a witness in his proceeding(s) against the DMV and will testify as to the allegations for which she possesses personal knowledge relating to his EEOC Charges. She has notified DMV supervisor(s) of the events giving rise to Mr. Supinger's EEOC Charges, and DMV knew she supported Mr. Supinger in his Charges. For example, on May 29, 2012, Plaintiff met with DMV officials regarding Supinger's 1st grievance for retaliation and misapplication of policy by Hill, Boswell and Jeanie Thorpe. And then on July 26, 2012, she met with Holcomb in Staunton to discuss unlawful practices at DMV.

Plaintiff reserves the right to supplement this response.

3. Explain in detail your actions in opposition to what you allege were unlawful employment practices at DMV. Include the dates of such conduct and specify the type of discrimination that you allege was involved.

**ANSWER:**

Objection, this Interrogatory is overly broad, vague, and unduly burdensome. Without waiving the objection, all facts mentioned in the complaint directly or indirectly will supplement this answer.

Further, from August 2011 to March 16, 2012, in the City of Lynchburg, at DMV, Jennifer Dawson's behavior and mental state deteriorated daily making working conditions unbearable at best (agents were forced to stay at the office in pairs); Dawson committed numerous Group II and III violations of the Standards of Conduct (DHRM Policy 1.60); the following are just a few examples of the violations committed by her:

- filing false allegations against coworkers;
- improperly possessing a weapon on state property;
- discussing suicide;
- insubordination;
- leaving her work station without authority or permission;
- failing to perform requested tasks in timely manner; and
- assaulting three (3) agents.

After witnessing these events, I addressed the following issues with my supervisor, David Stultz:

- Dawson's erratic and violent behavior; she was yelling and screaming while talking on the phone, slamming the phone on the receiver, slamming and throwing items on her desk and her office, displaying numerous outbursts of uncontrollable tears, and running out of the office and slamming the door;
- Dawson's easy access to a gun, as she had a concealed weapon permit and brought her firearm to the workplace premises;
- Ms. Dawson's failure to complete work related tasks;
- Providing incorrect information to DMV customers; and
- Acting as a law enforcement officer in front of DMV customers.

On March 15, 2012, Andrew Hicks, Chris Davis, Robbie Supinger and I reported workplace violence committed by Dawson to Richard Holcomb. Later, I made the complaint to Holcomb and Hill by email. On March 16, 2012, at the direction of Hill and

Boswell, I confirmed through a NCIC/VCIN check through the Department of State Police that Dawson possessed a concealed weapons permit. I notified my superiors that this put us all in danger.

On April 6, 2012, Division of State Internal Audit Manager Tim Sadler interviewed me regarding a complaint filed with the State Fraud, Waste, and Abuse Hotline. The interview centered on the actions of Dawson over the previous eight months to include the gift bag that she had given to Hill.

On April 14, 2012, Supinger filed a grievance for retaliation regarding transfer to Waynesboro in which I am/have been a witness as to the unlawful reason for the transfer.

On April 25, 2012, I met with State Senator John Edwards. I disclosed the corruption, impropriety, and malfeasance on the part of government officials; violations of law; and incidences of fraud, abuse, and gross mismanagement which were carried out by Holcomb, Hill, Jeanie Thorpe and Boswell.

On April 27, 2012, I met with Senator Steve Newman. I disclosed corruption, impropriety, and malfeasance on the part of government officials; violations of law; and incidences of fraud, abuse, and gross mismanagement which were carried out by Holcomb, Hill, Jeanie Thorpe and Boswell.

On May 11, 2012, I met with all sworn members of the Appomattox Division to advise them that Dawson would return to the building on May 14, 2012, with no local supervision. At that meeting, the members raised their concerns with Boswell and Hill regarding the public safety concerns posed by Dawson's presence at the Lynchburg office because of her past and aggravated violations of the Standards of Conduct (DHRM 1.60) and Workplace Violence policy (DHRM 1.80). Hill and Boswell ignored these concerns.

On May 29, 2012, I met with DMV officials regarding Supinger's 1st grievance for retaliation and misapplication of policy by Hill, Boswell and Jeanie Thorpe. On July 26, 2012, I met with Holcomb in Staunton to discuss unlawful practices at DMV.

On September 13, 2012, Dawson committed assault and battery upon me on state property while she was on duty. This was the third assault and battery committed by Dawson over the past six (6) months on coworkers who were on duty police officers at the time of the offenses. DMV central management failed to respond to take action to protect me from Dawson in response to my allegation of assault and battery.

On September 14, 2012, I met with the Lynchburg Commonwealth's Attorney. The Commonwealth's Attorney directed me to swear out a misdemeanor assault and battery warrant with the magistrate's office for Dawson. After the magistrate issued a lawful warrant, a deputy from the Bedford County Sheriff's Office served PST Dawson with the warrant.

On September 16, 2012, Boswell contacted me and ordered me to report to DMV in Richmond on September 17, 2012 to be interviewed by Thomas Penny regarding an internal investigation. On September 17, 2012, I was interrogated by Tom Penny regarding the events of September 13, 2012. I reiterated my concerns about the above workplace infractions.

On October 9, 2012, I was interrogated for a second time by Penny regarding the administrative investigation of Dawson, again opposing the unlawful actions of all in the DMV.

On October 12, 2012, others and I met with State Senator Creigh Deeds. We disclosed matters of public concern about DMV with Senator Deeds.

On or about November 1, 2012, Supinger submitted a complaint to the EEOC regarding gender discrimination perpetrated against him at DMV. I am a witness in this complaint.

On January 17, 2013, Supinger submitted a complaint to the EEOC regarding race, national origin and color discrimination perpetrated against him at DMV. I am a witness in his complaint.

On January 29, 2013, the trial on Dawson's assault and battery in which I was victim was held. I testified against the unlawful battery that occurred at DMV.

On February 5, 2013, I was forced to undergo a four (4) hour interrogation by Tom Penny and Ronda Howard regarding an investigation of all events occurring in the Appomattox Division from August of 2011 to present day. Boswell and Penny forced me to appear for and cooperate in the interrogation. I testified as to the unlawful acts that occurred in the office. I was also questioned regarding the charges and complaints filed by Supinger, and my acts in speaking to elected and other government officials.

Further incidents noted in other questions fall within this category as well. Please reference all documents in response to Defendants' Request for Production for dates, details, and relevant documents.

Plaintiff reserves the right to supplement this response.

4. Identify any Defendants communicating in a conspiracy to terminate your employment as set forth in ¶ 126 of your Complaint?

**ANSWER:**

All named Defendants have conspired to terminate me for unlawful and untruthful reasons.

5. Which communications had an actual influence on the decision to terminate your employment and how did those communications have influence?

**ANSWER:**

This Interrogatory is vague and overbroad: Plaintiff was not present for, nor can she possibly be aware of each and every "communication [that] had an actual influence on the decisions to terminate [her] employment and how ... those communications [had] influence," nor is she aware of which communications may have actually influenced "the decisions to terminate [her] employment;" the interrogatory does not limit its application to communications between or among a specific group of persons or certain individuals; and Plaintiff does not know what was present in the minds of the persons who shared in whatever communications about which this interrogatory is asking.

Plaintiff reserves the right to supplement this response.

6. Specify in detail your losses and damages resulting from the conduct of any Defendant.

**ANSWER:**

Due to the actions of the Defendants, I have suffered:

1. A destroyed reputation in the community as I was fired from my job and defamed.
2. I have suffered lost pay equal to my annual salary and benefits package, including: health insurance, a COBRA plan, and a retirement package, and

will not be able to obtain positions in the field of law enforcement: I have had no income since being terminated from DMV in April 2013.
3. Pain and suffering from the stress, damages, health issues and anxiety surrounding the events in my Complaint.
4. I have been forced to pay attorney fees, court costs, and suffer the stress of litigation.
5. Additionally, exercise of my constitutional rights has been suppressed.

Further incidents noted in other questions fall within this category as well. Please reference all documents in response to Defendants' Request for Production for dates, details, and relevant documents.

Plaintiff reserves the right to supplement this response.

7. Identify all the facts and circumstances in chronological order that you contend went into the decision to terminate your employment.

**ANSWER:**

See the Complaint herein, and the answers to these Interrogatories and documents produced in response to the Request for Production of Documents.

Further incidents noted in other questions fall within this category as well. Plaintiff reserves the right to supplement this response.

8. Identify the facts and circumstances that support your allegation, Complaint ¶129, that the purpose of DMV's termination of your employment was punishment, retaliation, or to dissuade you from engaging in protected activity.

**ANSWER:**

See the Complaint in this action, the other answers to these interrogatories and documents produced in response to DMV's request for production of documents.

Additionally, on October 12, 2012, I met with State Senator Creigh Deeds, where I and others spoke to him about matters of public concern involving DMV. This was not the first time that I had met with elected officials outside of DMV. DMV agents became aware that I had met with elected officials and set out to retaliate against me for doing so.

On September 16, 2012, Boswell contacted me and ordered me to report to DMV in Richmond on September 17, 2012 to be interviewed by Thomas Penny regarding an internal investigation. While the purported purpose of the investigation was the assault and battery perpetrated against me by Jennifer Dawson, the focus of this interview was to gather evidence to use to support my termination.

One or more defendants expressed on numerous occasions that they did not want me to converse with elected officials. On September 28, 2012, Boswell called Supinger and questioned him about his contact with elected officials. At a subsequent meeting with Stultz and Anderson, Boswell stated that I was in jeopardy of termination because of my contact with elected outside officials.

On February 5, 2013, I was forced to undergo a 4-hour interrogation by Tom Penny and Ronda Howard regarding an investigation of all events occurring in the Appomattox Division from August of 2011 to present day. This questioning focused on my interactions with elected officials outside of DMV. Penny and Howard asked detailed questions numerous times about my trips to see elected officials, the content of my discussions with them, and who went to these meetings. In the interrogations by Penny

and Howard, the two expressly told me that I was not allowed to speak to elected officials or anyone outside of DMV about my concerns. It was clear that the Defendants were intimidating me in an effort to stop me from conversing with elected officials.

On April 5, 2013, DMV issued two Written Notices to me containing fabricated allegations that DMV relied upon to terminate my employment.

The DMV has interrogated me and investigated me since the incident in which I was the victim, but that interrogation has not centered on what actually happened. Instead, the DMV retaliated against me for exercising my rights as a citizen and speaking to elected officials on matters of public concern.

Further incidents noted in other questions fall within this category as well. Please reference all documents in response to Defendants' Request for Production for dates, details, and relevant documents.

Plaintiff reserves the right to supplement this response.

9. Identify all the facts and circumstances in chronological order that you contend demonstrate bias against you because of your gender (female) and explain how, if at all, such facts and circumstances led to your job termination.

**ANSWER:**

See the Complaint in this action, the other answers to these interrogatories and documents produced in response to DMV's request for production of documents.

On March 2, 2011, when I interviewed for the Special Agent (SA) position, Dawson pulled SAC Stultz to the side and told him that hiring a female agent would be something that he should not do and that she was against it. Once I was announced as the

successful candidate for the Senior Special Agent position, Dawson expressed her displeasure with the selection of me because I was woman.

Dawson's behavior towards me, because I was a woman, made daily working conditions unbearable. She frequently stalked me and reported my actions to my supervisors in an attempt to get me into trouble. She committed numerous Group II and III violations of the Standards of Conduct. Many of her violations invovled me as the victim. Despite numerous written and verbal complaints about Dawson's behavior, the Defendants failed to correct Dawson's behavior and ultimately fired me instead.

DMV failed to protect me from workplace violence, which occurred because of Ms. Dawson's bias against me as a woman. DMV also retaliated against me for bringing Ms. Dawson's prejudicial and intimidating actions to light.

Further incidents noted in other questions fall within this category as well. Please reference all documents in response to Defendants' Request for Production for dates, details, and relevant documents.

Plaintiff reserves the right to supplement this response.


10. Identify all the facts and circumstances in chronological order that you contend demonstrate bias against you because of your national origin or race (Russian) and explain how, if at all, such facts and circumstances led to your job termination.

**ANSWER:**

See the Complaint in this action, the other answers to these interrogatories and documents produced in response to DMV's request for production of documents.

On May 11, 2011, I reported for my first day of work as an Appomattox Division Special Agent. Dawson remarks to Andrew Hicks that an immigrant (me) should not get jobs that are for Americans. Because of my status as an immigrant, Dawson made complaints to my superiors attempting to get me in trouble. For example, in August of 2011, Dawson complained to Stultz that I locked my office door. She continued to report bogus allegation against me to my superiors.

On February 5, 2013, I was forced to undergo a 4 hour interrogation by Penny and Ronda Howard regarding an investigation of all events occurring in the Appomattox Division from August of 2011 to present day. During the interrogation I was told that I violated the "unwritten rule" on the use of the lady's bathroom in the building where my office is located. By that Penny and Howard indicated that when I saw Dawson in the bathroom I should have left immediately, because she had a problem with an immigrant being in the bathroom with her. This policy ensured that she could use the bathroom before I could, because I was a Russian.

On March 6, 2013, I received a Letter of Allegation issued by Joe Hill, The letter contained a reference to the unwritten rule on the use of the bathroom and that Dawson had the right to use it before me and with me excluded from it. The bathroom is large enough for several persons to utilize it at the same time with no difficulties.

Throughout their interrogation Howard and Penny twisted my words from the previous interrogations in an effort to confuse me and make it appear I was being untruthful since English is not my first language. They intimidated me and made me feel self-conscious about my speech.

Between November 2012 and January 2013, my interrogation transcripts were leaked to Dawson's attorney in the assault and battery charge in which I was the victim, specifically noting small differences in descriptive words that I used.

Because Ms. Dawson did not like my national origin, she proceeded to harass, intimidate, and ultimately assault me at work. DMV officials did nothing to respond to this biased behavior, but instead ignored it. I was terminated as a natural consequence of DMV doing nothing to respond to Ms. Dawson's bias and prejudice.

Further incidents noted in other questions fall within this category as well. Please reference all documents in response to Defendants' Request for Production for dates, details, and relevant documents.

Plaintiff reserves the right to supplement this response.

11. Identify your personal electronic devices (any capable of creating a "document" as defined in Rule 26) by providing the necessary information for access including but not limited to your telephone numbers and telephone providers, internet identities and internet providers, email addresses and email carriers, social media web sites and application used with your sign-in names and passwords.

**RESPONSE:**

For the same reasons cited by one or more of the Defendants in response to this interrogatory when served upon them in a case related to the same incidents that led to my termination, I decline to provide this information.

Respectfully submitted,
ANASTASIA V. WOOTTEN

s/ Melvin E. Williams
Of Counsel

Melvin E. Williams (VSB No. 43305)
  mel@melwilliamslaw.com
Micah D. Wright (VSB NO. 88129)
  micah@melwilliamslaw.com
MEL WILLIAMS PLC
1320 Third Street, SW
Roanoke, Virginia 24016
(540) 266-7800
(540) 206-3857 facsimile

Cassie Baudeán
Baudeán Law, PLLC
9962 Brook Road, #654
Glen Allen, Virginia 23059
804-447-0146
804-447-0164 facsimile
clbaudean@baudeanlaw.com
  Counsel for Anastasia V. Wootten

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 11, 2015 the foregoing document was sent via electronic mail to:

Sydney E. Rab
Sr. Assistant Attorney General
Va. State Bar No. 15105
Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219
(804) 786-1109
Fax: (804) 371-2087
srab@oag.state.va.us
  Counsel for the Defendant DMV

s/ Melvin E. Williams